**Juan M. VASQUEZ, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**GERTLER & GERTLER, LTD. Steven D. Gertler, Amy L. Gertler, and Kevin F. Plachta, Defendants.**

No. 97 C 5005.

United States District Court,
N.D.Illinois,
Eastern Division.

Dec. 5, 1997.

Declaration is granted.

Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Sara E. Lorber, Edelman & Combs, Chicago, IL, for Plaintiff.

Donald Brown, Jr., Richard Brandon Foster, III, Virginia C. Leete, Karen Kies DeGrand, Donohue, Brown, Mathewson & Smyth, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiff Juan Vasquez brought this putative class action in federal court claiming that the defendant law firm of Gertler & Gertler, LTD. ("Gertler") and its lawyers, Steven D. Gertler, Amy L. Gertler, and Kevin F. Plachta, violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e[1] and § 1692g.[2] His claims under both sections rest on allegations that the defendants sent Vasquez a debt collection letter containing language that contradicts and overshadows his FDCPA rights to dispute the validity of the debt.

The defendants have moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6), contending that Vasquez cannot state a FDCPA claim under any set of facts consistent with the complaint. This Court converted Vasquez's response to the defendants. motion to dismiss to a motion for summary judgment after the Seventh Circuit decided *Bartlett v. Heibl,* 128 F.3d 497 (7th Cir.1997), which made clear that courts can decide the overshadowing issue as a matter of law based on the collection letter's language. After careful consideration, we grant the defendants' motion to dismiss with prejudice, and deny plaintiff's converted motion for summary judgment.

### RELEVANT FACTS[3]

On May 30, 1992, Mr. Vasquez purchased a 1988 Toyota Camry from Schaumburg Toyota through a retail installment contract. (Compl.¶¶ 7, 8.) Vasquez's purchase was financed by First Bank, FSB ("First Bank"). (*Id.* ¶ 9.) Vasquez allegedly defaulted on his car payments. (*Id.* ¶ 10.) At this point, First Bank retained the Gertler law firm to collect the $1,221.03 allegedly owed. (*Id.* ¶ 11.) In an attempt to collect this debt, Gertler sent Vasquez a collection letter, which forms the basis of Vasquez's claims. (*Id.* ¶ 12, 26.) Because the letter disposes of this lawsuit, the Court reproduces its entire text:

RE: Juan M. Vasquez account with
First Bank, FSB
our File No. 97–00161–0

Dear Mr. Vasquez:

Please be advised that I have been retained by First Bank, FSB to collect a debt from you in the amount of $1,521.03.

Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of the debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice, that you dispute the debt or any portion thereof, this office will obtain verification of the debt and mail you a copy of such verification. If there has already been a judgment entered against you, and you request from us in writing a verification of such judgment, this office will obtain a copy of the judgment and mail you a copy of the judgment. If you request this office [sic] in writing within thirty (30) days after receiving this notice, this office will provide you with

---

1. Section 1692e states, in relevant part, that "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

2. Section 1692g states as follows:

(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
(1) the amount of the debt;
(2) the name of the creditor to whom the debt is owed;
(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification will be mailed to the consumer by the debt collector; and
(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

3. The following facts and allegations are drawn from the plaintiff's complaint.

the name and address of the original creditor, if different from the current creditor. Our office is attempting to collect a debt for our client, and any information obtained from you will be used for that purpose.

Kindly let me have your immediate attention and cooperation by sending me your payment or contacting me without further delay.

> Very truly yours,
>
> Steven D. Gertler

The issue is whether this letter gives rise to a claim for relief under the FDCPA. We hold that it does not.

## LEGAL STANDARDS[4]

### A. Motion to Dismiss

In deciding a Rule 12(b)(6) motion to dismiss, we accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Murphy v. Walker,* 51 F.3d 714, 717 (7th Cir.1995); *Northern Trust Co. v. Peters,* 69 F.3d 123, 129 (7th Cir.1995). A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990). The question is whether relief is possible under any set of facts that could be established consistent with the allegations. *Northern Trust,* 69 F.3d at 129. The Court need not accept conclusory legal allegations as true. *Baxter v. Vigo County Sch. Corp.,* 26 F.3d 728, 730 (7th Cir.1994); *Trull v. GC Servs. Ltd. Partnership,* 961 F.Supp. 1199, 1202–03 (N.D.Ill.1997).

### B. FDCPA Claims

 Congress enacted the FDCPA in 1977 "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). To this end, the Act sets certain standards for communications that debt collectors send to debtors. Among them is a

requirement that debt collectors advise debtors of their rights to dispute the debt and demand verification. *See id.* § 1692g. The Seventh Circuit evaluates communications that allegedly violate this requirement "through the eyes of an unsophisticated consumer." *Jang v. A.M. Miller & Assocs.,* 122 F.3d 480, 483–84 (7th Cir.1997); *see Avila v. Rubin,* 84 F.3d 222, 226 (7th Cir.1996). The unsophisticated consumer standard is meant to protect a "hypothetical consumer" who is "uninformed, naive or trusting."[5] *Gammon v. GC Services Ltd. Partnership,* 27 F.3d 1254, 1257 (7th Cir.1994); *Jang,* 122 F.3d at 483–84 (internal quotations and citations omitted). It presumes a level of sophistication that "is low, close to the bottom of the sophistication meter." *Avila,* 84 F.3d at 226. Still, the standard "admits an objective element of reasonableness," which "protects debt collectors from liability for unrealistic or peculiar interpretations of collection letters." *Jang,* 122 F.3d at 483–84 (internal quotations and citation omitted).

## ANALYSIS

### I. Vasquez Fails to State a FDCPA Claim Under § 1692g

Vasquez contends that the defendants violated FDCPA section 1692g's requirement to explain his rights to verify and dispute the debt. Specifically, he claims that (1) the request for Vasquez's "immediate attention" by "sending me your payment" contradicts his thirty-day rights to demand validation and dispute the debt; and (2) the request to "contact[]" the defendants "without further delay" induces a waiver of these rights because a request for debt verification must be in writing, not by telephone or otherwise.

 To comply with section 1692g, a debt collection letter must, at minimum, include language explaining the debtor's rights

---

4. In light of our decision to grant the motion to dismiss, we omit the standards for summary judgment.

5. Although numerous other circuits employ a "least sophisticated" consumer or debtor standard, the Seventh Circuit has adopted the "unsophisticated" consumer standard to "relieve incongruity between what the [least sophisticated

consumer] standard would entail if read literally, and the way courts have interpreted the standard." *See Gammon,* 27 F.3d at 1257. While the least sophisticated consumer is, literally, the "single most unsophisticated consumer who exists," circuits that use this standard nevertheless "routinely blend in the element of reasonableness." *Id.*

to dispute the debt and demand verification. But the validation notice must also "be effective, and it cannot be cleverly couched in such a way as to eviscerate its message." *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 518–19 (7th Cir.1997) (citing *Avila*, 84 F.3d at 226). Even if a letter properly contains the information mandated by section 1692g(a), "the debt collector may not overshadow or contradict that information with other messages sent with the validation notice or within the validation period." *Id.* at 518.

The Seventh Circuit most recently addressed the requisites for an overshadowing claim in *Bartlett v. Heibl*, 128 F.3d 497 (7th Cir.1997). The court explained that while the FDCPA does not explicitly prohibit confusing disclosures, appeals courts have held "that it is implicit that the debt collector may not defeat the statute's purpose by making the required disclosures in a form or within a context in which they are unlikely to be understood by the unsophisticated debtors who are the particular objects of the statute's solicitude." *Id.* at 500. Stated simply, "the unsophisticated consumer is to be protected against confusion, whatever form it takes." *Id.* Examples of prohibited confusion include language that directly contradicts the thirty-day validation period, language that "overshadows" the debtor's verification rights, and "the failure to explain an apparent though not actual contradiction" between the thirty-day validation period and a more immediate demand for action. *Id.* at 500–01.

In *Bartlett*, the debtor received a dunning letter that, on the one hand, demanded within one week of the letter that Bartlett either make a payment or call the creditor to make payment arrangements in order to avoid legal action, and on the other hand, informed the debtor that he had thirty days to dispute and demand verification of the debt. *Id.* at 498–99. In addition, the letter stated just below the validation notice that "suit may be commenced at any time before the expiration of this thirty (30) days." *Id.* The court held that this was confusing as a matter of law, directing judgment in the debtor's favor on remand. *Id.* at 501–03. Telling Bartlett he would be sued if he did not begin payments within a week, while simultaneously stating that Bartlett may contest the debt within thirty days, "turn[ed] the required disclosure into legal gibberish. That's as bad as an outright contradiction." *Id.* at 501.

In an attempt to provide guidance on how to comply with § 1692g, the *Bartlett* court formulated a letter that provides a safe harbor for debt collectors. *Id.* at 501–03. The letter states:

Dear Mr. Bartlett:

I have been retained by Micard Services to collect from you the entire balance, which as of September 25, 1995, was $1,656.90, that you owe Micard Services on your Master-Card Account No. 5414701617068749.

If you want to resolve this matter without a lawsuit, you must, within one week of the date of this letter, either pay Micard $316 against the balance that you owe (unless you've paid it since your last statement) or call Micard at 1–800–221–5920 ext. 6130 and work out arrangements for payment with it. If you do neither of these things, I will be entitled to file a lawsuit against you, for the collection of this debt, when the week is over.

Federal Law gives you thirty days after you receive this letter to dispute the validity of the debt or any part of it. If you don't dispute it within that period, I'll assume that it's valid. If you dispute it—by notifying me in writing to that effect—I will, as required by the law, obtain and mail to you proof of the debt. And if, within the same period, you request in writing the name and address of your original creditor, if the original creditor is different from the current creditor (Micard Services), I will furnish you with that information too.

The law does not require me to wait until the end of the thirty-day period before suing you to collect this debt. If, however, you request proof of the debt or the name and address of the original creditor within the thirty-day period that begins with your receipt of this letter, the law requires me to suspend my efforts (through litigation or otherwise) to collect the debt until I mail the requested information to you.

Sincerely,

John A. Heibl

*Id.* at 501–02. Applying the *Bartlett* court's reasoning and safe harbor letter to the case at hand, we must conclude that the defendants did not violate § 1692g.

■ The Vasquez letter begins with, and in fact is largely comprised of, the validation notice explaining Vasquez's right to demand verification in writing and dispute the debt within thirty days; nothing else in the letter could cause confusion about these rights. First, there is no direct contradiction—nothing demands payment or any other action within a period shorter than thirty days. *See, e.g., Avila v. Rubin,* 84 F.3d 222, 226 (7th Cir.1996) (letter giving debtor ten days to pay "or else" inconsistent with thirty days allowed by validation notice); *Chauncey v. JDR Recovery Corp.,* 118 F.3d 516, 518–19 (7th Cir.1997) (telling debtor that collection agency must receive payment within thirty days contradicts debtor's right to send notification of dispute within thirty days). Nor does the letter contain language that "overshadows" the notice by threatening ominous action if Vasquez doesn't act quickly. *See, e.g., Russell v. Equifax A.R.S.,* 74 F.3d 30, 34–35 (2d Cir.1996) (informing debtor that payment within ten days would prevent posting collection to his file rendered notice "ineffective"); *Graziano v. Harrison,* 950 F.2d 107, 111 (3d Cir.1991) (threat to sue within ten days would induce debtor "to overlook his statutory right to dispute the debt within 30 days ."); *Vaughn v. CSC Credit Servs., Inc.,* 1995 WL 51402, at *3 (N.D.Ill. Feb.3, 1995) (threat to add "this account" to debtor's credit bureau record if no immediate payment or phone call overshadowed validation rights). There is not even an apparent contradiction that fails to explain how the thirty-day right to demand verification fits together with a creditor's right. *See, e.g., Bartlett,* 128 F.3d at 500–01; *Ozkaya v. Telecheck Servs., Inc.,* 982 F.Supp. 578, 583–85 (N.D.Ill.1997) (warning that "any delay" in payment "may affect your ability to use checks" could confuse unsophisticated consumer because it fails to explain how this comports with thirty-day validation rights). Instead, the letter begins with the verification notice, right on the front of the letter, and does not hide it with an obscure reference to the reverse side of the letter, bury the notice in small print, or encourage its disregard in any way.

We reject Vasquez's assertion that the letter's one-sentence request to "[k]indly let me have your immediate attention and cooperation by sending me your payment or contacting me without further delay" somehow creates confusion. While a demand for immediate payment may overshadow a validation notice, the letter does not demand payment immediately or within any time period less than thirty days. Rather, the letter asks for Vasquez's immediate attention, a request that has never been found to violate section 1692g. The phrase "merely recommends that" Vasquez "look into the matter as soon as possible." *Gammon v. Belzer,* 1997 WL 189291 at *3, 1997 U.S. Dist. LEXIS 5170, at *10 (N.D.Ill. Apr. 11, 1997) (holding that the statement "[y]our immediate attention to this matter is in your best interest" did not violate § 1692g).

■ The rest of the sentence, "by sending me your payment or contacting me without further delay," is a permissible effort to collect the debt. "Section 1692g does not require the debt collector to suspend collection activities. Rather, the debt collector need only cease collection if the consumer disputes the debt or requests the name and address of the original creditor within the validation period, and then only until it mails a copy of the verification to the consumer." *Trull v. GC Servs. Ltd. Partnership,* 961 F.Supp. 1199, 1205 (N.D.Ill.1997); *see Bartlett,* 128 F.3d at 501–03, ("The debt collector is perfectly free to sue within thirty days; he just must cease his efforts at collection during the interval between being asked for verification of the debt and mailing the verification to the debtor."). Instead of demanding conduct that is inconsistent with the debtor's thirty-day verification rights, the letter simply provides the debtor with a possible course of action: payment (with no specified time limit) or contact (also with no time limit). Recognizing the propriety of presenting the debtor with such options in addition to his verification rights, the *Bartlett* safe-harbor

letter incorporates similar language. It asks that the debtor either pay or contact the debt collector to make payment arrangements within one week to stave off a lawsuit. 128 F.3d at 501–03, Like the safe harbor letter, the Vasquez communication would not confuse the unsophisticated consumer into believing that he no longer had thirty days to dispute the debt.

Equally fruitless is Vasquez's argument that asking the debtor to contact defendants "without further delay" induces a waiver of section 1692g rights. Because debt verification requests must be written, Vasquez claims that the defendants' request for "contact" encourages unwritten communication that would not be effective to exercise his verification rights. In support of this position, Vasquez cites *Flowers v. Accelerated Bureau of Collections, Inc.*, 1997 WL 136313, 1997 U.S. Dist. LEXIS 3354 (N.D.Ill. Mar. 13, 1997), *modified on reconsideration,* 1997 WL 224987, 1997 U.S. Dist. LEXIS 6070 (N.D.Ill. Apr. 29, 1997). *Flowers* held that the debtor stated a 1692g claim when he received a second collection letter that omitted the thirty-day validation notice and demanded that the debtor phone or write the collection agency immediately. Because the phone call demand "implies that Ms. Flowers could dispute her debt by telephone," it contradicted the validation notice contained in the first letter, which explained that verification demands must be in writing. *Id.*, 1997 WL 136313 at *7, *19. That the second letter neither reprinted the validation notice nor referred to the notice contained in the first letter made it unlikely that the debtor would realize debt disputes must be written, not phoned. *Id.*

*Flowers* is inapposite to this case. First, the letter here just asks for "contact." It says nothing about a phone call, and does not even list the defendants' phone number anywhere other than in the letterhead. Second, unlike the second letter in *Flowers,* this communication contains a validation notice, printed conspicuously up front at the beginning of the letter.[6] The notice clearly informs the debtor that debt disputes must be presented in writing. Consequently, the Vasquez letter does not leave the unsophisticated consumer with the mistaken impression that he can dispute the debt by telephone.[7]

The remainder of plaintiffs' overshadowing cases are likewise distinguishable, either because they demand payment within a time period that contradicts the validation notice, threaten the debtor with adverse action, or fail to explain how the debt collector's right to sue and the debtor's verification rights fit together. *See Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 518–19 (7th Cir.1997) (required payment within thirty days); *Avila v. Rubin,* 84 F.3d 222, 226 (7th Cir.1996) (demanded payment within ten days); *Miller v. Payco–General Am. Credits, Inc.,* 943 F.2d 482, 484 (4th Cir.1991) ("THIS IS A DEMAND FOR IMMEDIATE FULL PAYMENT OF YOUR DEBT," and direction to "PHONE U.S. ... TODAY"); *Vaughn v. CSC Credit Servs., Inc.,* 1995 WL 51402, at *3 (N.D.Ill. Feb.3, 1995) ("Please either send us PAYMENT IN FULL today or immediately call our office to discuss this account. Otherwise, this account could be added to your credit bureau record and adversely affect your ability to obtain credit for up to seven years."); *Adams v. Law Offices of Stuckert & Yates,* 926 F.Supp. 521, 524 (E.D.Pa.1996) ("If I do not receive prompt payment I must take further action to collect this debt, and I do not have to give you any further notice. I may bring a lawsuit...."). The letter here has none of these shortcom-

---

**6.** Upon reconsideration, the *Flowers* court held that the demand for a phone call stated a section 1692g claim for a second reason. It demanded that Flowers "telephone me immediately" without reminding her that she still had, as of the date the letter was sent, thirteen days in which to dispute the debt. 1997 WL 224987, 1997 U.S. Dist. Lexis 6070 (N.D.Ill. Apr. 30, 1997). As such, the letter's failure to include or refer to the validation notice could give rise to a second violation—beyond contradicting the writing re-

quirement. This holding, like the first, has no application here because the letter in this case contained a validation notice spelling out how many days Vasquez had to dispute the debt.

**7.** Our holding is bolstered by the fact that the *Bartlett* court's safe harbor letter specifically asks for a telephone call, 128 F.3d 497, 501–03, while the defendants' letter leaves the method of contact entirely up to the debtor.

ings. For the reasons above, Vasquez's section 1692g claim fails as a matter of law.

## II. Vasquez Fails to State a FDCPA Claim Under § 1692e

■ Vasquez contends that the very same allegedly overshadowing and contradictory language that transgresses section 1692g is also misleading and, as such, violates section 1692e as well. He points to no other false, deceptive, or misleading representations by the defendants. Absent any other basis for Vasquez's section 1692e claim, our overshadowing determination is dispositive because the only way in which he claims this language is misleading is that it contradicts and overshadows. As such, the validity of Vasquez's section 1692e claim rests wholly on our finding a violation of section 1692g. Our failure to do so renders the section 1692e claim deficient as a matter of law. Accordingly, we dismiss it.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted. Plaintiff's pending motions for summary judgment and class certification are hereby denied as moot. *See Allen v. Aronson Furniture Co.,* 971 F.Supp. 1259, 1261 (N.D.Ill.1997). This lawsuit is dismissed with prejudice. The Clerk of the Court is directed to enter judgment in favor of the defendant and against the plaintiff pursuant to Fed.R.Civ.P. 58.