Margaret **WALKER**, Plaintiff,

v.

**NATIONAL RECOVERY, INC.,** Defendant.

No. 98 C 4530.

United States District Court, N.D. Illinois, Eastern Division.

March 2, 1999.

Order Denying Reconsideration, April 29, 1999.

Daniel A. Edelman, Ignacio D. Maramba, Charles H. Lee, Edelman & Combs, Chicago, IL, for Plaintiff.

David M. Schultz, John M. Foley, Hinshaw & Culbertson, Chicago, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

MORTON DENLOW, United States Magistrate Judge.

Margaret Walker ("Plaintiff") instituted this class action lawsuit against National Recovery, Inc., ("Defendant") alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (1998). Defendant now brings a motion to dismiss for failure to state a claim. Fed.R.Civ.P. 12(b)(6).[1] For the following

---

1. The Court notes that Plaintiff's motion for class certification is also pending; however, it is appropriate in certain cases for a court to address dispositive motions prior to deciding whether to certify a class. *See Jenkins v.*

reasons the Court holds that the facts as alleged demonstrate that Defendant did not violate the FDCPA and grants Defendant's motion to dismiss.

## I. Factual Background

Plaintiff is an individual who resides in Bellwood, Illinois. Defendant is a professional debt collection agency and qualifies as a "debt collector" under the FDCPA. 15 U.S.C. § 1692a(6). In February 1998 Defendant mailed to Plaintiff one of its standard form collection letters (the "dunning letter"). The letter demanded payment of an overdue personal loan made to Plaintiff by Commercial Credit. The letter addressed to Plaintiff states:

> Your past-due account with **Commercial Credit** has been placed with our company for immediate collection. Failure to respond may result in further collection activity and possible legal action.
>
> Unless you notify this office in writing within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume that this debt is valid. If you notify this office in writing within THIRTY (30) days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request in writing within THIRTY (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.
>
> Please remit **PAYMENT IN FULL** with this letter to the address above or you may pay in person at our office.

> Make payment payable to **NATIONAL RECOVERY, INC.**
>
> If you have any questions concerning your account please contact me at my office.
>
> Si Ud. necesita ayunda en la traduccion de esta carta, por favor llamenos para enviarle una traduccion.

Plaintiff alleges that the letter violates the FDCPA because it in effect is a demand for immediate payment which contradicts and overshadows the validation notice required under the FDCPA.

## II. Standard of Review

In analyzing Plaintiff's complaint under Rule 12(b)(6), the court must accept as true the allegations in the complaint and the inferences that may be reasonably drawn from them. Fed.R.Civ.P. 12(b)(6); *Bowman v. City of Franklin*, 980 F.2d 1104, 1107 (7th Cir.1992). A motion to dismiss may be granted only if the court concludes that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). A plaintiff's claim can be dismissed if the plaintiff pleads facts which demonstrate that the plaintiff does not have a viable claim. *Thomas v. Farley*, 31 F.3d 557, 558–59 (7th Cir.1994).[2]

## III. The Fair Debt Collection Practices Act

### A. § 1692g Requirements

The Fair Debt Collection Practices Act requires a "validation notice" to be present in letters seeking to collect debts:

> which it complains with any particularity. But if a plaintiff does plead particulars, and they show that he has no claim, then he is out of luck—he has pleaded himself out of court. He is not saved by having pleaded a legal conclusion that if consistent with the facts would establish his right to relief, for he has shown that it is inconsistent with the facts." *Thomas v. Farley*, 31 F.3d 557, 558–59 (7th Cir.1994) (citations omitted).

*Union Corp.*, 999 F.Supp. 1120, 1124 n. 1 (N.D.Ill.1998); *Allen v. Aronson Furniture Co.*, 971 F.Supp. 1259, 1261 (N.D.Ill.1997). In light of the Court's decision to grant Defendant's motion to dismiss, the Court denies the motion for class certification without prejudice.

2. "[W]ith immaterial exceptions the Federal Rules of Civil Procedure do not require that a complaint describe the alleged wrongdoing of

(a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion there of, the debt will be assumed to be valid by the debt collector.

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) If the consumer notifies the debt collector in writing within the thirty-day period ... the debt collector shall cease collection of the debt ... until the debt collector obtains [such information requested].

15 U.S.C. § 1692g.

At issue is whether the dunning letter violates the FDCPA. Specifically, Plaintiff claims that the use of the words "immediate collection" and information as to the consequences of a failure to respond in the first paragraph of the letter, the FDCPA's required validation notice in the second paragraph of the letter, and a request for **"PAYMENT IN FULL"** in the third paragraph of the letter violates § 1692 of the FDCPA. Plaintiff contends that the additional language overshadows or contradicts the included validation notice and therefore confuses the reader. The Court concludes that as a matter of law the letter does not violate the FDCPA and, consequently, "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). Defendant is entitled to have its motion to dismiss granted.

The FDCPA has been interpreted to not only require the above described notification, but the validation notice also must not be contradicted nor overshadowed by other parts of the letter. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir.1997). "Merely including the requisite validation notice in a collection letter is not sufficient to satisfy the FDCPA; the notice must be communicated effectively." *Keen v. Omnibus International, Inc.*, No. 98 C 3947, 1998 WL 485682, at *2 (N.D.Ill. Aug.12, 1998) (citing *Swanson v. Southern Oregon Credit Serv.*, 869 F.2d 1222, 1225 (9th Cir. 1988)). "All Courts of Appeals which have addressed the issue in this case, including this Circuit, have held that, even though the § 1692g(a) information properly is included in a communication from a debt collector to a debtor, the debt collector may not overshadow or contradict that information with other messages sent with the validation notice or within the validation period." *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 518 (7th Cir.1997). Additional communications in the letter may not overshadow the validation notice by obscuring it either visually or via emphatic techniques. *Keen*, 1998 WL 485682, at *2 (citing *Bartlett*, 128 F.3d at 500). Furthermore, those additional statements may not be included if they would confuse the debtor regarding the rights disclosed in the validation notice. *Keen*, 1998 WL 485682, at *2 (citing *Swanson*, 869 F.2d at 1225). For instance, other communications which contradict the validation no-

tice, in the sense that they are logically inconsistent with it, would be confusing and therefore are not permitted. *Keen,* 1998 WL 485682, at *2 (citing *Bartlett,* 128 F.3d at 500). However, words or phrases may not be taken out of the context of the letter to be measured against the requirements of the FDCPA but instead the letter must be viewed in its entirety. *Keen,* 1998 WL 485682, at *3 (citing *Bartlett,* 128 F.3d at 501).

### B. Unsophisticated Consumer Standard

■ The standard by which the Court views the letter is one of the unsophisticated consumer. *Bartlett,* 128 F.3d at 500. "[T]he debt collector may not defeat the statute's purpose by making the required disclosures in a form or within a context in which they are unlikely to be understood by the unsophisticated debtors who are the particular objects of the statute's solicitude." *Id.* Adopting the unsophisticated consumer standard the Seventh Circuit explained its contours. "We reiterate that an unsophisticated consumer standard protects the consumer who is uninformed, naive, or trusting, yet it admits an objective element of reasonableness. The reasonableness element in turn shields complying debt collectors from liability for unrealistic or peculiar interpretations of collection letters." *Gammon v. GC Services Ltd. Partnership,* 27 F.3d 1254, 1257 (7th Cir.1994). Thus the standard weighs in reasonableness and fairness to debt collectors. While the standard does not require collection letters to be drafted in only the most basic and rudimentary language such that elementary school children could understand them, it also does not allow contradictory and complicated statements that would confuse an unsophisticated consumer. "The unsophisticated consumer is to be protected against confusion whatever form it takes." *Bartlett,* 128 F.3d at 500.

### C. Analysis

There is a wealth of caselaw addressing § 1692g of the FDCPA and both Plaintiff and Defendant cite numerous cases to support their respective positions. The Court concludes that several Seventh Circuit and Northern District of Illinois cases addressing FDCPA violations are sufficiently analogous to persuade the Court that Defendant's dunning letter is in compliance with the FDCPA. Furthermore, the Court concludes that the numerous cases cited by Plaintiff which find violations of the FDCPA are distinguishable from the present case.

### 1. The Text of the Letter Is Not Confusing to an Unsophisticated Consumer

The first of the factually analogous cases from the Northern District of Illinois is *Keen v. Omnibus International, Inc.,* No. 98 C 3947, 1998 WL 485682 (N.D.Ill. Aug.12, 1998). In *Keen* the defendant provided the validation notice in the dunning letter. *Id.* at *1. As in the present case, the majority of the letter was comprised of the requisite notice and the letter did not use "typeface, font, or other graphic techniques to draw attention to any part of the letter." *Id.* at *2.

Furthermore, Plaintiff's arguments in the present case are similar to those in *Keen.* Both rest on the use of the word "immediately." In the case at bar, the letter states that the account has been placed with Defendant for "immediate collection." In *Keen* the defendant requested that the recipient respond "immediately." *Id.* at *2. The court in *Keen,* relying on *Terran v. Kaplan,* 109 F.3d 1428 (9th Cir. 1997), concluded that there was a distinction between requiring immediate contact as opposed to immediate payment. *Compare Jenkins v. Union Corp.,* 999 F.Supp. 1120, 1131–32 (N.D.Ill.1998) (holding that requesting immediate payment violated FDCPA). The court, relying on *Bartlett,* concluded that the use of the word "immediate" did not conflict with the statement of plaintiff's rights under the FDCPA. *Keen,* 1998 WL 485682, at *2–*4 (citing *Bartlett v. Heibl,* 128 F.3d 497, 501–502

(7th Cir.1997)). Similarly, the use of the word "immediate" in the present case, that is, stating that the account has been placed with Defendant for "immediate collection," does not conflict with the validation notice. *See also Bato v. Associated Creditors Exch.*, No. 98 C 2791, 1998 WL 749070 (N.D.Ill. Oct.16, 1998) (holding that use of language "immediate collection" in a dunning letter does not communicate a demand for immediate payment or a threat of immediate action and therefore does not violate FDCPA).

*Vasquez v. Gertler & Gertler, Ltd.*, 987 F.Supp. 652, 657 (N.D.Ill.1997), is also on point. The dunning letter at issue in *Vasquez* was largely comprised of the validation notice. *Id.* One long paragraph explained that the plaintiff had a thirty-day period to demand verification in writing and dispute the debt and the letter did not bury, hide, or obscure the notice in any way. *Id.* The aspect of the letter that was contended to a be a violation of the FDCPA was one sentence that said "[k]indly let me have you immediate attention and cooperation by sending me your payment or contacting me without further delay." *Id.* The court noted that such a requirement "has never been found to violate section 1692g. The phrase 'merely recommends that' Vasquez 'look into the matter as soon as possible.'" *Id.* (citing *Gammon v. Belzer*, No. 96 C 5936, 1997 WL 189291, at *3 (N.D.Ill. Apr.11, 1997)). The court found that there was no direct contradiction in that no statement in the letter demanded payment or even any other action in less than thirty days and there was no implication that there will be legal action or any other adverse consequence if the plaintiff did not act quickly. *Id.* The court also found the phrase "by sending me your payment or contacting me without further delay" to be a permissible effort to collect the debt. *Vasquez*, 987 F.Supp. at 657. *Vasquez* noted that by requesting payment or contact the letter was just providing the debtor with different options as courses of conduct. *Id.*

■ The letter in the present case is similar to that in *Vasquez* and not as objectionable as that in *Keen*. From the standpoint of an unsophisticated consumer, the first paragraph of the letter informs the debtor that the account is past due and that the Defendant has been hired to collect the debt. That paragraph goes on to inform the debtor of the consequences of failing to respond. The recipient at this point may be questioning how to respond. The next paragraph answers that question by informing the recipient of several options for response all of which involve a thirty-day time frame. The paragraph consists of the requisite validation notice and includes all information required by § 1692g of the FDCPA. The final paragraph provides the debtor with one more option for response, payment in full, and tells the debtor how and where she might pay. It does not include any threats or time restrictions.

Regarding the use of the word "immediate" in the letter, instead of demanding an immediate response, the letter only stated that the debt had been submitted to the agency for immediate collection. This is just a way of informing the debtor that the agency would go about its debt collection activities. The creditor has every right to continue its debt collection activities until it receives written notice from the debtor, as the court noted in *Vasquez*. 987 F.Supp. at 657. *See also Bartlett v. Heibl*, 128 F.3d 497, 501–02 (7th Cir.1997) (stating that creditor is entitled to file lawsuit against debtor during validation period if that lawsuit is suspended when debtor asks for validation). As compared to *Keen*, the only response that the letter demands is either written response within the thirty-day validation period or payment within no specified time. Thus, no response is asked for that contradicts Plaintiff's rights under the FDCPA. The only time period the debtor need worry about is the thirty-day time period set forth three times in the second paragraph. The most that can be said of the use of the word "immediate" is that, in the context of

the overall letter, it suggests that the collection agency will act promptly but, as in *Keen* and *Vasquez,* does not require immediate action by the debtor in order to preserve her rights.

In addition, similar to the letter in *Vasquez,* the letter in the present case simply informs the debtor of her different options. The second paragraph of the letter provides the debtor with one course of conduct, exercising her right of verification, and the final paragraph provides the debtor with another course of conduct, making payment. Stating that "[f]ailure to respond may result in further collection activity and possible legal action" informs the debtor of the consequences of taking neither course.

Plaintiff cites *Gammon v. Belzer,* No. 96 C 5936, 1997 WL 189291 (N.D.Ill. Apr.11, 1997), in support of her position; however the Court believes that, to the contrary, *Gammon* further supports the Court's holding that the mere use of the word "immediate" in a dunning letter does not warrant an automatic finding of a § 1692g violation. In *Gammon* the letter stated "Your immediate attention to this matter is in your best interest." *Id.* at *2. Plaintiff points out that the Gammon court concluded that the letter complied with the FDCPA in that it did not "demand that Gammon submit payment or seek validation immediately, or include any other language which would overshadow Gammon's rights under the FDCPA." *Id.* at *4. Plaintiff argues that the letter in the present case is distinct because it does seek immediate payment. As noted above, the Court concludes that, while the letter seeks payment, it does not demand immediate payment. Consequently, since the language "immediate collection" in the present letter does not go so far as the language in the *Gammon* letter requesting "immediate attention," it is well within the *Gammon* holding to conclude that there is no violation in the present case.

### 2. The Letter Is Not Visually Confusing

■ Furthermore, the visual presentation did not emphasize a need for the recipient's immediate action. *See U.S. v. National Financial Services, Inc.,* 98 F.3d 131, 139 (4th Cir.1996) (holding that letter violated FDCPA when validation notice was printed on back of letter in small type and light grey·ink while text on front of letter demanded immediate payment and threatened legal action in bold type). The word "immediate" does not appear any differently from the rest of the text. To the contrary, the emphasis is on the thirty-day time period. The word "THIRTY" appears in capital letters twice, thus emphasizing that the debtor has thirty days to respond. In addition, thirty days is the only response time delineated in the letter. While **"PAYMENT IN FULL"** also appears in capitals and bold face, as the Court has previously noted, no time period is given within which the debtor is told to remit payment. Requesting payment in full in such a manner is a permissible effort to collect the debt and does not overshadow the long paragraph providing the validation notice. *Vasquez,* 987 F.Supp. at 657.

### 3. Plaintiff's Cases Are Distinguishable

Plaintiff argues that the present case falls within the holding of *Jenkins v. Union Corp.,* 999 F.Supp. 1120 (N.D.Ill.1998). Specifically, Plaintiff relies on the court's holding in *Jenkins* that the first collection letter sent to Plaintiff Terrafino violated the FDCPA. *Id.* at 1132. Plaintiff is correct in noting that that letter is very similar to the one in the case at hand in that it does not demand immediate payment but refers to "immediate collection." *Id.* However, the letter at bar is distinguishable from the *Jenkins* letter in two important respects. First, the *Jenkins* letter began with the declaration that it was "URGENT," thus creating the overall impression that immediacy of action was needed.

*Id.* In addition, the letter contained a final sentence that "[s]trongly recommend[ed]" that the recipient make contact or payment. *Id.* The court in *Jenkins* did not rely simply on the words "immediate collection" for its conclusion that the letter violated § 1692g, but instead specifically relied on the "[s]trong recommend[ation]" along with the reference to "immediate collection" to find that the two "[r]ead together" "are the substantive equivalent of [a] request for immediate payment . . . ." *Id.* The court then concluded that "viewed as a whole, the letter creates an apparent and unexplained contradiction between its message and the thirty-day validation rights." *Id.* In that *Bartlett* dictates that words should not be read out of context and the *Jenkins* letter contained several significant additions which created the overall impression that the debtor should act hastily, the Court concludes that the present case does not fall within the holding of *Jenkins.* Although the dunning letter at issue did state "immediate collection" as did the *Jenkins* letter, the Court finds that contrary to *Jenkins,* that phrasing used in the context of the overall letter does not create the impression that it is a request for immediate payment.

Finally, the Court finds that the present case is easily distinguishable from the major Seventh Circuit cases which have found violations. Plaintiff argues that the defects in the letter in the present case could be cured in the same manner as the defects in the letter in *Bartlett* were cured, that is, by including a paragraph which explains how the debtor's § 1692g rights can coexist with the creditor's right to pursue collection and bring legal action. *Bartlett v. Heibl,* 128 F.3d 497, 502 (7th Cir.1997). The Seventh Circuit's model letter included such a paragraph which stated:

> The law does not require me to wait until the end of the thirty-day period before suing you to collect this debt. If, however, you request proof of the debt or the name and address of the original creditor within the thirty-day period that begins with your receipt of this letter, the law requires me to suspend my efforts (through litigation or otherwise) to collect the debt until I mail the requested information to you.

The Court concludes that for two reasons such a paragraph is not legally required in the case at hand. First, the model letter in *Bartlett* contained a demand for payment within a specific time period. No such demand for payment within a set time period is included in the present letter. Second, the need for the paragraph was created by the conflict between the validation notice and the demand for payment within a time period shorter than thirty days. There is no such conflict in the present letter because the only time restriction included in the letter is the thirty-day period in the validation notice. Consequently, the case before the Court is distinguishable from *Bartlett* in the same manner that the present case is distinguishable from several other Seventh Circuit cases which have found violations of the FDCPA.

The Seventh Circuit has found, in a number of cases, FDCPA violations to turn on a contradiction between a debtor's rights under the FDCPA and requests for payment in less than thirty days. The Seventh Circuit in *Bartlett,* 128 F.3d at 500, held that a letter is confusing, and thus in violation of the FDCPA, if it demands payment and threatens legal action within seven days while at the same time informs debtor of the thirty-day validation period, unless it explains that legal action will be stayed pending the requested verification. In *Chauncey v. JDR Recovery Corp.,* 118 F.3d 516 (7th Cir.1997), the Seventh Circuit stated:

> Defendant argues that the letter contains no contradiction because plaintiff is given the same amount of time to pay as to contest the debt (i.e., 'within thirty (30) days'). But the letter required that plaintiff's payment be received within the 30–day period, thus requiring plaintiff to mail the payment prior to the thirtieth day to comply. In contrast,

... Mr. Chauncey had the full thirty days to send his notification to defendant.

*Id.* at 519. In *Avila v. Rubin,* 84 F.3d 222, 226 (7th Cir.1996), the Seventh Circuit held that even a marginally qualified demand for payment in a short time period is a violation. "We think that telling a debtor he has 30 days to dispute the debt and following that with a statement that '[i]f the above does not apply' you have ten days to pay up or real trouble will start is entirely inconsistent, and a failure to comply, with the FDCPA." *Id.* Consequently, because there is no demand for payment or even action within a time period that conflicts with Plaintiff's FDCPA rights, the present case does not fall within the prior major Seventh Circuit holdings finding violations of the FDCPA.

## IV. Conclusion

The Fair Debt Collection Practices Act § 1692g requires a validation notice to be included in all dunning letters and that this notice not be overshadowed or contradicted by other language included in the letters. The Court concludes that Defendant complied with § 1692g because the letter contains a proper validation notice and when read in its entirety is not confusing to an unsophisticated consumer. Because the Court finds that the facts as pleaded demonstrate that Defendant did not commit a violation of the Fair Debt Collection Practices Act, **the Court grants Defendant National Recovery, Inc.'s motion to dismiss against Plaintiff Margaret Walker and directs that the case be dismissed with prejudice and that judgment be entered in favor of Defendant.**

### *SUPPLEMENTAL MEMORANDUM OPINION AND ORDER*

Margaret Walker ("Plaintiff") instituted this class action lawsuit against National Recovery, Inc., ("Defendant") alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et*

seq. (1998). Following briefing and oral argument, the Court granted Defendant's motion to dismiss. *Walker v. National Recovery, Inc.,* at 780. Plaintiff now moves the Court to reconsider its decision in light of the Seventh Circuit's opinion in *Johnson v. Revenue Management Corp.,* 1999 WL 101583 (7th Cir.1999) (to be reported at 169 F.3d 1057).[1] Having carefully considered the *Johnson* opinion, the Court denies the Plaintiff's motion for reconsideration.

## I. Standard of Review for a Motion for Reconsideration

A proper basis for a motion for reconsideration is a change in law. *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir.1990). That is the basis upon which Plaintiff's motion for reconsideration is brought before this Court.

## II. The *Johnson* Opinion

Plaintiff contends that the Court's decision in this case granting Defendant's motion to dismiss is contrary to the Seventh Circuit's *Johnson* decision. At issue in *Johnson* were two collection letters sent to the two plaintiffs, Johnson and Wollert. *Johnson,* 169 F.3d at 1059. The Court has determined that its prior decision properly applies the principles set forth in *Johnson.*

## A. *Johnson* is Distinguishable

The Court concludes that the present case is distinguishable from what the Seventh Circuit found to be at issue in the *Johnson* case. The letter to Johnson contained a paraphrase of the statutory notice and added the following disputed language:

> If you fail to make prompt payment we will have no alternative but to proceed with collection, which may include referring this account for legal action or reporting this delinquency to the credit bureau. Should you wish to discuss this

---

1. The Seventh Circuit's decision in *Johnson* was a consolidation of two district court cases: *Johnson v. Revenue Management Corp.,* No. 98 C 2275 (Lindberg, J.) and *Wollert v. Client Services, Inc.,* No. 98 C 3934, 1998 WL 474118 (Shadur, J.).

matter, contact our office and ask for extension 772.

*Id.* at 1059.

In *Johnson,* the district court was reversed because it used "the wrong legal standard." *Id.* The Seventh Circuit held that the district court in *Johnson* had committed errors by deciding whether a letter was confusing as a matter of logic. *Id.* at 1060. The district court also only considered whether the language in the dunning letter "contradicted" or "overshadowed" the statutory notice. This was not the proper test. *Id.* at 1060. The Seventh Circuit pointed out that the standard is whether a letter is confusing from the perspective of an unsophisticated consumer. *Id.* The Seventh Circuit reemphasized the three means of inducing confusion laid out in *Bartlett v. Heibl,* 128 F.3d 497 (7th Cir.1997): explicit contradiction, overshadowing, or failure to explain an apparent, although not actual, contradiction. *Johnson,* at 1060. The Seventh Circuit criticized the district court in *Johnson* for never asking whether the failure to explain an apparent, though not actual, contradiction between the demand for an "immediate" call and the thirty-day statutory notice period made the letter confusing.[2]

The issues present in the *Johnson* case are not present in the case at bar. The Court did not treat the question of confusion as a matter of logic but instead viewed it from the perspective of the unsophisticated consumer. *See Walker,* at 777 ("The Text of the Letter Is Not Confusing to an Unsophisticated Consumer."); *id.* at 781 ("The Court concludes that Defendant complied with § 1692g because the letter contains a proper validation notice and when read in its entirety is not confusing to an unsophisticated consumer."). The Court addressed all three possible avenues of confusion and concluded, from the perspective of an unsophisticated consumer as opposed to as a matter of logic, that the letter did not include any of those violations. First, no argument was ever made that the *Walker* letter contained an explicit contradiction. Second, the Court noted that there was no visual overshadowing. *Id.* at 779–80. Finally, and most importantly, the great bulk of the opinion was spent on explaining why there was no implicit or apparent contradiction that needed explaining, *id.* at 777–80, the issue that the Seventh Circuit deemed the most important of the three, *Johnson,* 169 F.3d at 1060. *See Walker,* at 778 ("[N]o response is asked for that contradicts Plaintiff's rights under the FDCPA."). The Court spent a whole paragraph explaining why language was needed in the *Bartlett* letter to explain the apparent contradiction but was not needed in the present case.[3] Consequently, the Court in the present case did ask

---

**2.** No demand for an immediate call appeared in the *Johnson* letter, but rather in the *Wollert* letter. *Johnson,* 169 F.3d 1057, 1059. So as to be able to address the points made in the Seventh Circuit's analysis of the impact of that demand for an immediate call, this Court will also treat the letter as if it contained a demand for an immediate call.

**3.** That paragraph read as follows:

Plaintiff argues that the defects in the letter in the present case could be cured in the same manner as the defects in the letter in *Bartlett* were cured, that is, by including a paragraph which explains how the debtor's § 1692g rights can coexist with the creditor's right to pursue collection and bring legal action. *Bartlett v. Heibl,* 128 F.3d 497, 502 (7th Cir.1997). The Seventh Circuit's model letter included such a paragraph which stated:

The law does not require me to wait until the end of the thirty-day period before suing you to collect this debt. If, however, you request proof of the debt or the name and address of the original creditor within the thirty-day period that begins with your receipt of this letter, the law requires me to suspend my efforts (through litigation or otherwise) to collect the debt until I mail the requested information to you.

The Court concludes that for two reasons such a paragraph is not legally required in the case at hand. First, the model letter in *Bartlett* contained a demand for payment within a specific time period. No such demand for payment within a set time period is included in the present letter. Second, the need for the paragraph was created by the conflict between the validation notice and the demand for payment within a time period shorter than thirty days.

whether there was a failure to explain an apparent though not actual contradiction between additional language included in the letter and the thirty-day validation period and, if so, whether it made the letter confusing. Thus the Court did not make the error that the Seventh Circuit found to be critical in *Johnson*. *Johnson*, 169 F.3d at 1060. The Court also applied the correct standard of questioning whether a letter is possibly confusing to an unsophisticated consumer instead of focusing just on contradiction and overshadowing, or confusion as a matter of logic.

### B. *Wollert* is Distinguishable

The letter to Wollert contained a paraphrase of the statutory language and added the following disputed language:

> The above account has been placed with our firm for payment in full. Call our office immediately upon receipt of this letter. Our toll free number is 1–800–521–3236.

*Johnson*, 169 F.3d at 1059.

In *Wollert*, the district court was reversed because the judge "used an inappropriate procedure." *Id.* at *2. The Seventh Circuit held that the district court effectively dismissed the case on the pleadings under Fed.R.Civ.P. 12(c) by failing to provide plaintiff with the opportunity to argue or augment his position. *Id.* In the case at bar, the parties fully briefed the issue and participated in oral argument before the decision was rendered. The Court applied the standards for review under Fed.R.Civ.P. 12(b)(6) as clearly stated by the United States Supreme Court and the Seventh Circuit. *Walker*, at 775. Therefore, *Wollert* is also distinguishable.

### C. Rule 12(b)(6) Is Appropriate Where Letter Is Attached

The Seventh Circuit held that it was inappropriate to dismiss the *Johnson* case on a Rule 12(b)(6) motion to dismiss. The Seventh Circuit stated that "Rule 12(b)(6) should be employed only when the complaint does not present a legal claim. A contention that a debt-collection notice is confusing is a recognized legal claim; no more is needed to survive a motion under 12(b)(6)." *Johnson*, at 1059. Plaintiff argues that the Seventh Circuit held that every letter that is challenged creates a question of fact for a jury to decide. This Court disagrees. The opinion states only that "[t]o learn how an unsophisticated reader reacts to a letter, the judge *may* need to receive evidence." *Id.* at 1060 (emphasis added). The Court emphasizes that the Seventh Circuit said may, not must. The Court reads this and other language in the Seventh Circuit decision as holding that the *Johnson* letter presented the possibility of confusion and, when that is a possibility, the question of confusion is one of fact for the jury to decide. However, that is a different case from *Walker*.

■ This Court held in its previous decision in *Walker* that there was no possibility of confusion as a matter of law. In such a situation, since there is no possibility of confusion, there is no question of fact for the jury to decide and dismissal is proper because the plaintiff can prove no set of facts consistent with her allegations that would entitle her to relief. Therefore, the Court concludes that the threshold question of possible confusion is a matter of law. Once a letter is found to be possibly confusing then the jury decides actual confusion.

This is consistent with prior Seventh Circuit cases which have decided as a matter of law whether certain letters violated the FDCPA. *See, e.g., Bartlett*, 128 F.3d 497; *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516 (7th Cir.1997). Nothing in the *Johnson* opinion overrules those cases. To the contrary, the Seventh Circuit explicitly relied on *Bartlett*. *Johnson*, 169

There is no such conflict in the present letter because the only time restriction included in the letter is the thirty-day period in the validation notice.

*Walker*, at 779–80.

F.3d 1057, 1999 WL 101583, at *2. Consistent with these prior holdings, the *Johnson* decision also cannot be interpreted to mean that a court cannot review a one-page letter attached to the complaint to consider whether relief could be granted under any set of facts. If that were the case, then a court would be required to deny a motion to dismiss even if the safe-harbor letter drafted by the Seventh Circuit in *Bartlett v. Heibl*, 128 F.3d 497 (7th Cir.1997) were attached. Certainly, if the Seventh Circuit can draft its own letter and conclude as a matter of law that the letter does not violate the FDCPA, a court can read a one-page letter and make a similar determination. *Jang v. A.M. Miller Assoc.*, 122 F.3d 480 (7th Cir.1997).

*Johnson* did not overrule previous Seventh Circuit precedents holding that it is appropriate to grant a motion to dismiss when a plaintiff includes facts in his or her complaint which demonstrate the absence of a viable claim. To the contrary, in *Johnson*, the Seventh Circuit cited to one of these very cases. *See Johnson*, at 1059–60 (citing *Bennett v. Schmidt*, 153 F.3d 516 (7th Cir.1998)). *Bennett* recognized that "litigants may plead themselves out of court by alleging facts that establish defendants' entitlement to prevail." *Bennett*, 153 F.3d at 519. This is a well established proposition within this Circuit.

> [W]ith immaterial exceptions the Federal Rules of Civil Procedure do not require that a complaint describe the alleged wrongdoing of which it complains with any particularity. But if a plaintiff does plead particulars, and they show that he has no claim, then he is out of luck-he has pleaded himself out of court. He is not saved by having pleaded a legal conclusion that if consistent with the facts would establish his right to relief, for he has shown that it is incon-. sistent with the facts.

*Thomas v. Farley*, 31 F.3d 557, 558–59 (7th Cir.1994) (citations omitted) *quoted in Walker*, at 775 n. 2.

While Plaintiff made a contention that the debt-collection letter was confusing, she also went beyond that and included the letter with her pleadings. The contents of that letter showed that Plaintiff had no claim because as a matter of law there was no possibility of the letter being confusing. The fact that Plaintiff pleaded the proper legal conclusion cannot save her because by pleading additional facts, she has shown that the facts are inconsistent with her claim. The contents of her letter disprove her legal claim that the letter is confusing. Consequently, the Court used the Rule 12(b)(6) procedure as the Seventh Circuit has done in other cases. *Jang v. A.M. Miller Assoc.*, 122 F.3d 480 (7th Cir.1997) (affirming dismissal under Rule 12(b)(6) of FDCPA claim). *Gammon v. GC Services*, 27 F.3d 1254 (7th Cir.1994) (examining the contents of a letter in order to determine that reversal of a dismissal was appropriate).

Plaintiff's argument must also fail for practical reasons. Plaintiff's argument would destroy the utility of Rule 12(b)(6) and would require the litigants to engage in expensive discovery and the cumbersome summary judgment process, when no fact questions are presented from the face of the letter. Such an interpretation of Rule 12(b)(6) is simply not consistent with the Supreme Court's standards for Rule 12(b)(6) set forth in *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984), and is not consistent with Rule 1 of the Federal Rules of Civil Procedure which require the rules to "be construed and administered to secure the just, speedy, and inexpensive determination of every action."

## III. Conclusion

The Court, after reviewing the Seventh Circuit's opinion in *Johnson*, concludes that its prior decision is consistent with *Johnson*. Therefore, **Plaintiff's motion for reconsideration is denied.**

